UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
DIAMOND STATE INSURANCE COMPANY,

                        Plaintiff,

               -against-

QUITERIA ORELLANA HIDALGO, FEI GUO,
DAVID CONTRACTOR NY, INC., and KFG
REALTY GROUP LLC,

                       Defendants.

**REPORT AND RECOMMENDATION**
20 CV 1340 (ENV) (CLP)

------------------------------------------------------------ x
**POLLAK**, Chief United States Magistrate Judge:

On March 12, 2020, plaintiff Diamond State Insurance Company ("plaintiff" or "Diamond State") commenced this Declaratory Judgment action against Quiteria Orellana Hidalgo ("Hidalgo"), Fei Guo ("Guo"), David Contractor NY, Inc. ("David Contractor"), and KFG Realty Group LLC ("KFG"), seeking to rescind certain insurance policies issued to Guo, and seeking a declaration that Diamond State has no obligation to defend or indemnify under the policies.

On September 9, 2020, plaintiff moved for entry of a default judgment against all defendants, rescinding the 2015, 2016, 2017, 2018, 2019, 2020, and 2021[1] insurance policies issued to Guo as void *ab initio* based on misrepresentations made by Guo when applying for and renewing the insurance policies, and declaring that Diamond State has no obligation to defend or indemnify Guo or any other defendant in the action filed in Queens County Supreme Court,

---

[1] Although the 2021 policy was not part of the initial pleadings (see generally Compl., ECF No. 1), based on the allegations in the Complaint, the Court finds that the defendants were on notice that, with respect to the default judgment pending before the undersigned, the plaintiff sought to rescind all policies that were issued based on the same misrepresentations.

1

captioned Hidalgo v. David Contractor NY, Inc. and KFG Realty Group LLC, Index No. 708709/2019 (the "underlying action"). Currently pending before this Court on referral from the Honorable Eric N. Vitaliano is Diamond State's motion for default judgment against defendants Hidalgo and David Contractor.

For the reasons set forth below, the Court respectfully recommends that Diamond State's motion be granted.

## FACTUAL BACKGROND

Plaintiff Diamond State alleges that it is a citizen of the states of Indiana and Pennsylvania, with its principal place of business located at 3 Bala Plaza East, Suite 300, Bala Cynwyd, Pennsylvania 19004. (Compl.[2] ¶ 1). Defendant Quiteria Hidalgo is a citizen of New York, residing in Queens. (Id. ¶ 2). Defendant Fei Guo is a citizen of New York, residing at 217 Martin Drive, Syosset, New York. (Id. ¶ 3). Defendant David Contractor is a New York corporation, with its principal place of business located at 39-12 Douglaston Parkway, Little Neck, New York 11363. (Id. ¶ 4). Defendant KFG is a limited liability company organized under the laws of the State of New York, with its principals being citizens of New York and its principal place of business located at 50-34 69th Street, Woodside, New York 11377. (Id. ¶ 5).

According to the Complaint, American Bankers Insurance Company ("American") issued insurance policies to defendant Guo for the property located at 50-34 69th Street, Woodside, N.Y. 11377 (the "Property"), covering the period June 28, 2014 to June 28, 2016. (Id. ¶ 13). Diamond State, as the successor to and owner of the rights of the American policies, also issued its own insurance policies for the same location, including: policy number FIR 152368 07,

---

[2] Citations to "Compl." refer to the plaintiff's Complaint filed on March 12, 2020, ECF No. 1.

2

covering the period June 28, 2016 to June 28, 2017 (the "2017 Policy"); policy number FIR 152368 08, covering the period June 28, 2017 to June 28, 2018 (the "2018 Policy"); policy number FIR 152368 09, covering the period June 28, 2018 to June 28, 2019 (the "2019 Policy"); policy number 152368 10, covering the period June 28, 2019 to June 28, 2020 (the "2020 Policy") (collectively, the "Policies"). (Id. ¶ 13).

On April 23, 2019, an accident allegedly occurred at the Property and a lawsuit was commenced in Supreme Court, Queens County: Quiteria Orellana Hidalgo v. David Contractor NY, Inc. and KFG Realty Group LLC (the "Hidalgo Action"). (Id. ¶ 7, Ex. A; Mulhern Aff.[3] Ex. AA). In the Hidalgo Action, Hidalgo seeks recovery from David Contractor and KFG for damages arising from an accident that was alleged to have occurred on April 23, 2019. (Id. ¶ 10). Hidalgo claims that she fell over an unbarricaded water hose abutting the Property. (Id.) Hidalgo sued KFG as the record owner of the Property, which had previously been owned by defendant Guo. (Mulhern Aff. ¶¶ 39, 40). David Contractor was sued based on the allegation that it created the condition that caused Hidalgo's accident. (Id.; see also Pl.'s Mem.[4] at 3).

The Complaint alleges that in procuring the Policies, Guo represented to the insurers that the Property was single-family dwelling, built in 1940 of masonry construction, not an apartment and not undergoing renovations. (Id. ¶ 16). He also represented that he was the owner of the Property. (Id.) The insurance companies relied on these material representations in issuing the Policies and the insurance was limited to coverage for Guo as an individual owner and for a

---

[3] Citations to "Mulhern Aff." refer to the Affidavit of Brian Mulhern, dated August 25, 2020, ECF No. 25-2.

[4] Citations to "Pl.'s Mem." refers to the Memorandum of Law in Support of Motion Requesting Judgment, filed by plaintiff on September 9, 2020, ECF No. 25-31.

3

dwelling built in 1940 of masonry construction that was a single-family dwelling, not undergoing renovation or reconstruction. (Id. ¶¶ 15, 17).

Plaintiff alleges that, as of July 2015, Guo no longer owned the Property, and in fact as of 2014 or 2015, the premises had been demolished and permits had been issued for new construction. (Id. ¶¶ 18, 19, 20). Plaintiff further alleges that prior to the issuance of the 2019 Policy, the premises was undergoing construction for a new apartment hotel to be built on the Property. (Id. ¶ 21). The Complaint alleges that: 1) the premises is not a one-family dwelling; 2) it was not constructed in 1940; and 3) it has been unoccupied since its demolition. (Id. ¶¶ 22-24). Based on these facts, plaintiff alleges that since at least 2015, Guo has misrepresented the circumstances relating to the Property in seeking the issuance of the Policies. (Id. ¶ 25). Plaintiff alleges that Guo had a duty to report the change in ownership and condition of the Property upon renewal of each one of the Policies and he failed to do so. (Id. ¶ 26). According to plaintiff, not only would Diamond State and American not have issued the Policies to Guo if they had known the true circumstances, but if they had issued policies, those policies would have been vastly different from the Policies that were issued. (Id. ¶¶ 27-28).

Since Guo has not had an insurable interest in the Property since 2015, when he ceased to have an ownership interest in his individual capacity, and the Policies were obtained through misrepresentations or fraud, plaintiff seeks rescission of the Policies and a declaration that American and Diamond State have no obligation to provide a defense or indemnification as to the claims asserted in the Hidalgo Action. (Id. ¶¶ 29(a), 29(b)).[5] In the alternative, plaintiff asks that the Court issue a declaration that the 2019 Policy does not cover the claims asserted in the

---

[5] The Court notes that the Complaint contains two paragraphs designated as "29." The Court has re-numbered the first one as "29(a)" and the second one as "29(b)."

Hidalgo Action and that, based on Guo's misrepresentation and/or concealment of material facts, Diamond has properly denied coverage under the 2019 Policy. (Id. ¶¶ 31-37).

PROCEDURAL BACKGROUND

Following the filing of the Complaint on March 12, 2020, David Contractor was served with a copy of the Summons and Complaint by first class mail at 39-12 Douglaston Parkway, Little Neck N.Y. 11363. (Verveniotis Decl.[6] ¶ 8). Counsel for defendant David Contractor waived service and agreed to serve an answer or a motion on or before 60 days from April 15, 2020. (Pl.'s Mem. at 6). When defendant failed to file an answer or otherwise respond within that time period, the Clerk of Court entered a Certificate of Default against David Contractor. (See ECF No. 21).

On April 10, 2020, Diamond served the Complaint on Hidalgo, who entered into a stipulation dated July 17, 2020, acknowledging service and extending the time for Hidalgo to answer until July 31, 2020. (Verveniotis Decl. ¶ 7; see also ECF No. 17). When Hidalgo failed to answer or respond to the Complaint, the Clerk of Court entered a Certificate of Default against Hidalgo on September 9, 2020. (See ECF No. 24).

Defendants Fei Guo and KFG were served with the Summons and Complaint on April 10, 2020. (Verveniotis Decl. ¶ 6; see also ECF Nos. 6, 7). According to plaintiff's counsel, Fei Guo and KFG have stipulated to the relief sought by plaintiff. (Verveniotis Decl. ¶ 4).

DISCUSSION

A. Default Judgment

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for entry of

---

[6] Citations to "Verveniotis Decl." refer to the Declaration of Steven Verveniotis, dated September 9, 2020, ECF No. 25-1.

5

a default judgment. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. See id.; see also Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default"). Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment. See Fed. R. Civ. P. 55(b). The Clerk of the Court entered a default against defendants on June 9, 2020. To date, defendants have not moved to vacate the default judgment.

Providing guidance as to when a default judgment is appropriate, the Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored" and doubts should be resolved in favor of the defaulting party. Id. Accordingly, plaintiffs are not entitled to a default judgment as a matter of right simply because a party is in default. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including (1) whether the grounds for default are clearly established;

(2) whether the claims were adequately pleaded in the Complaint, thereby placing the defendant on notice, see Fed. R. Civ. P. 54(c) (stating: "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); King v. STL Consulting LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved – the more money involved, the less justification for entering the default judgment. See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992). Additionally, the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendant. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

B. Standard for Default Judgment

It is well-settled that the burden is on the plaintiff to establish its entitlement to recovery. See Clague v. Bednarski, 105 F.R.D. 552 (E.D.N.Y. 1985). When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability. See Greyhound Exhibit Group, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (citing United States v. Di Mucci, 879 F.2d 1488, 1497 (7th Cir. 1989)); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65; Deshmukh v. Cook, 630 F. Supp. 956, 959-60 (S.D.N.Y. 1986). However, the plaintiff must still prove damages in an evidentiary proceeding at which the defendant has the opportunity to contest the claimed damages. See

7

Greyhound Exhibit Group, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158. "'While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'" Levesque v. Kelly Communications, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)).

In this case, Diamond State does not seek damages but rather seeks declaratory relief, arguing that a declaratory judgment is appropriate here because "it 'will undoubtedly clarify and settle the legal issue of whether [plaintiff] is responsible for providing coverage to defendants.'" (Pl.'s Mem. at 7 (quoting GuideOne Specialty Mut. Ins. Co. v. Rock Community Church, Inc., 696 F. Supp. 2d 203, 212 (E.D.N.Y. 2010))).  The Second Circuit has held that when a declaratory judgment will serve a useful purpose in clarifying the legal relationships at issue or when it will terminate and afford relief from the "uncertainty, insecurity and controversy" underlying the proceedings, then a declaratory judgment is appropriate. Broadview Chem. Corp. v. Loctite Corp., 417 F.2d 998, 1001 (2d Cir. 1969); see also Government Employees Ins. Co. v. Infinity Health Prods., Ltd., No. 10 CV 5611, 2012 WL 1427796, at *4 (E.D.N.Y. 2012).

Here, given the nature of the plaintiff's claims, if plaintiff has established its entitlement to relief under the Complaint, the Court finds that a declaratory judgment will serve a useful purpose in settling the legal relationships at issue.

C. Plaintiff's Fraud Claim

Plaintiff Diamond State has alleged that the Policies at issue were obtained as a matter of fraud or misrepresentation.  In alleging a claim of fraud, the plaintiff must allege that there are facts demonstrating:  1) a material misrepresentation or omission of fact; 2) made with knowledge of its falsity; 3) reliance by plaintiff on the misrepresentations; 4) and damages

8

caused by the misrepresentations. See Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2d Cir. 1997); Allstate Ins. Co. v. Polack, No. 08 CV 0565, 2012 WL 4489282 (E.D.N.Y. Sept. 12, 2012), adopted by, 2012 WL 4490775 (E.D.N.Y. Sept. 28, 2012); see also Lama Holding Co. v. Smith Barney, 88 N.Y.2d 413, 646 N.Y.S. 2d 76 (1996) (defining the elements of fraud as a misrepresentation known by defendant to be false, made for the purpose of inducing plaintiff to act in reliance thereon, action in reliance and injury resulting therefrom). A plaintiff alleging common law fraud can establish an inference of scienter when facts are alleged showing that 1) defendants had both motive and opportunity to commit fraud; or 2) there was "strong circumstantial evidence of conscious misbehavior or recklessness." 380544 Canada, Inc. v. Aspen Tech., Inc., 633 F. Supp. 2d 15, 29 (S.D.N.Y. 2009) (quoting Kalnit v. Eichler, 264 F.3d 131, 138-39 (2d Cir. 2001)). While "fraudulent intent . . . is rarely susceptible to direct proof," it can be established by inference drawn from the circumstances. Setters v. AI Properties and Developments (USA) Corp., 139 A.D. 3d 492, N.Y.S. 3d 87 (1st Dept. 2016); see also In re Direct Access Partners, LLC, 602 B.R. 495, 544 (S.D.N.Y. 2019) (collecting cases).

Under New York Insurance Law, a misrepresentation is defined as a false statement "as to a past or present fact, made to the insurer by, or by authority of, the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof." N.Y. Ins. L. § 3105(a). A "material misrepresentation" is one that had the insurer been aware of the facts misrepresented, the insurer would not have issued the policy, see Zilkha v. Mutual Life Ins. Co. of New York, 287 A.D.2d 713, 714, 732 N.Y.S.2d 51 (2d Dep't 2001), or would have issued a different policy. See Varshavskaya v. Metropolitan Life Ins. Co., 68 A.D.3d 855, 856, 890 N.Y.S.2d 643 (2d Dept. 2009).

Here, plaintiff has alleged that defendant Guo misrepresented his ownership of the Property when he sought to renew the Policies in 2015, 2016, 2017, 2018, 2019, 2020 and 2021. (Compl. ¶¶ 13, 15; see also infra at n. 1). It is further alleged that defendant Guo failed to inform Diamond State of the demolition of the home, the ongoing renovation, and reconstruction throughout the years. (Id. ¶¶ 20, 21). Plaintiff alleges that defendant Guo obtained the Policies from American and from Diamond State, knowing that the location being insured was not what was represented in the applications for the Policies. (Id. ¶¶ 25, 26). Plaintiff further alleges that it relied to its detriment on the representations made by Guo in issuing the Policies and that it would not have issued the Policies or would have issued different policies had it been aware of the misrepresentations made in the applications for insurance. (Id. ¶¶ 27, 28). Since defendants Hidalgo and David Contractor have failed to appear in this action and not responded to the Complaint, the plaintiff's allegations as to these facts remain unchallenged. Taking the allegations as true for purposes of this default judgment and considering the additional evidence provided by Diamond State in support of its claims (see infra at 7), the Court respectfully recommends that the Complaint states a claim for fraud sufficient to warrant entry of default judgment.

D. Rescission

Plaintiff seeks a declaration that the Policies are void and should be rescinded. When an insurer relies on a material misrepresentation made by the insured, the insurer is entitled to rescind the policy. See Republic Ins. Co. v. Masters, Mates & Pilots Pension Plan, 77 F.3d 48, 52 (2d Cir. 1996); John Hancock Life Ins. Co. v. Perchikov, 553 F. Supp. 2d 229, 236 (E.D.N.Y. 2008); see also Smith v. Guardian Life Ins. Co., 116 A.D.3d 1031, 1033, 984 N.Y.S.2d 597 (2d Dept. 2014) (rescinding the policy based upon a showing that the insurer would not have issued

10

the particular policy had it been aware of the material misrepresentations). In a less extreme example than here, in Lema v. Tower Insurance Co. of New York, the homeowners represented that the home was a two-family dwelling when it was actually a three-family dwelling; nonetheless, the court rescinded the policy finding that the misrepresentation was material to the issuance of the policy. 119 A.D.3d 657, 990 N.Y.S.2d 231 (2d Dept. 2014).

In support of its motion seeking rescission, plaintiff Diamond State has submitted the Affidavit of Brian Mulhern, Claims Specialist for the Global Indemnity Group, which includes Diamond State. (Mulhern Aff. ¶ 1). According to his Affidavit, Mr. Mulhern is responsible for handling all claims arising out of the alleged trip and fall accident involving Quiteria Hidalgo and the action pending in State Supreme Court. (Id.)

Diamond first received notice of the Hidalgo Action on or about January 22, 2020. (Id. ¶¶ 39-40; Pl.'s Mem. at 3). According to the claims in the underlying state court action, Ms. Hidalgo was injured on April 23, 2019. (Mulhern Aff. ¶ 40, Ex. AA). Although defendant Guo was not named as a party to the underlying state court action, Diamond State became aware of the lawsuit since it allegedly occurred at 50-34 69th Street, in Woodside, NY, and any coverage sought would be under the 2019 Policy. (Id.; see Ex. L). The Declaration page of the 2019 Policy provides coverage for "Named Insured: Fei Guo;" "Location of Insured Property 50 34 69th St. Woodside, NY 11377 Queens." (Id.) The Policy further describes the insured dwelling as "Dwelling # 1, Year – 1940, Construction Type – Masonry, # of Units – 1 Unit (1 Family)." (Id.) The Policy also contains an Endorsement on Form DL 25 31 ed. 2/10 which states:

> We do not provide coverage for the "insured who, whether before or after a loss has:
>     i. Intentionally concealed or misrepresented any material fact or circumstance; or
>     ii. Engaged in fraudulent conduct; relating to this insurance."

11

(Id. ¶ 43, Ex. L).

After learning of the lawsuit, Diamond State conducted an investigation and learned that Guo, the insured named under the Policies, was not the owner of the Property and had not been the owner for years. (Mulhern Aff. ¶ 37). Guo was initially insured on the Property by American beginning in 2010 and subsequently by Diamond State beginning in June 2016. (Id. ¶ 6). Based on Diamond State's investigation, records show that Guo transferred the Property to KFG on July 28, 2015. (Id. ¶¶ 6, 12, Ex. E (the deed transferring ownership to KFG), Ex. F (showing that KFG was a newly formed entity as of May 8, 2015)). Guo never indicated to either American or Diamond State that there had been a change in ownership; thus, insurance on the Property was issued based on his representations in the renewal of each Policy. (Id.) By transferring ownership of the Property, Guo was no longer eligible for insurance coverage under the Dwelling Policies issued by either American or Diamond State.[7] (Id. ¶ 13, Ex. G (the 2016 Policy issued by American)).

Records obtained from the New York City Department of Buildings during the course of Diamond State's investigation, including permits and stop work orders, demonstrate that in 2014, work commenced to demolish the one-family dwelling located on the Property and to construct a three-unit, three-family apartment hotel. (Id., Exs. O-Y). Other records[8] indicate that the new apartment building was to have five units. (Id. ¶ 34). Finally, records discovered by plaintiff

---

[7] According to the Mulhern Affidavit, Diamond State became successor and owner of the rights of American to certain policies and Diamond State issued policies of insurance to Guo on the Property from June 28, 2016 to June 28, 2021. (Mulhern Aff. ¶ 14). According to Mulhern, Guo never informed Diamond State of any transfer of the ownership of the Property or that Guo no longer had an ownership interest in the Property. (Id. ¶ 15).

[8] These records include complaints filed with the Department of Buildings from June 23, 2015 until January 14, 2020, that the Property was being transformed into a five-story building. (Mulhern Aff. ¶ 30, Ex. Y).

12

show that Guo listed the Premises as not vacant when a July 2019 anti-arson application was filed.  (Mem. at 4; Mulhern Decl., Ex. Z).

Plaintiff seeks to rescind all of the Policies, based on Guo's failure to indicate any changes in the status of the Property and the fact that material misrepresentations were made each year after 2015 that, if known to Diamond State, would have resulted in the denial of the renewal of the Policies.  These material misrepresentations include the fact that Guo lacked an insurable interest in the Property after it was transferred to KFG on July 28, 2015.  New York Insurance Law provides that "[n]o contract or policy of insurance on property made or issued in this state . . . shall be enforceable except for the benefit of some person having an insurable interest in the property insured."  N.Y. Ins. L. § 3401.  Not only have courts found that "mere possession or license to use the property" is insufficient to support a finding of insurable interest, Azzato v. Allstate Ins. Co., 99 A.D.3d 643, 649,  951 N.Y.S.2d 726 (2d Dept. 2012), but courts have found that a policy of insurance terminates when the property is transferred to another entity.  See Carbone v. 243 W. 118th St., LLC, No. 100422/2006, 2008 WL 5409675 (N.Y. Sup. Ct. Dec. 19, 2008).  By transferring ownership of the Property to KFG, Guo relinquished any ownership interest in the Property and therefore had no insurable interest required to obtain coverage.  Both American's and Diamond State's underwriting policies are clear that in order to obtain coverage for the Property, Guo must have owned the Property; his failure to inform plaintiff of the transfer of ownership was a material misrepresentation that warrants rescission of the Policies.

In addition, the applications made by Guo to obtain the Policies represented that what was being insured was a single-family dwelling, built in 1940 of masonry construction, that was tenant-occupied and not undergoing reconstruction or renovation.  However, not only had Guo

13

transferred ownership of the Property, but the dwelling was demolished and undergoing construction into a premises consisting of a three-unit, three-family apartment hotel. According to Diamond State, had the company been aware of this, it would not have issued a policy to Guo, and if they were to issue a policy on this Property, it would have been a different one. (Pl.'s Mem. at 11-12). Not only was Guo aware of the essential information, which he had a duty to disclose, but these misrepresentations as to the nature of the Property were clearly material to Diamond State's decision to issue the Policy. According to underwriting guidelines, the premiums are calculated based on the Fair Rental Value of the Property. (Mulhern Aff. ¶ 35, Ex. H). A newly constructed apartment complex has a higher fair rental value than a single-family home. (Id.) Plaintiff asserts that had Guo disclosed the fact that the Property was no longer a single-family home, but rather was a three-unit apartment building, plaintiff would have charged higher premiums. (Id.; Pl.'s Mem. at 13 (citing Gugleotti v. Lincoln Sec. Life Ins. Co., 234 A.D.2d 514, 651 N.Y.S.2d 600 (2d Dept. 1996) (rescinding policy where insured failed to disclose information that would have led to higher premiums being charged on the policy))).

Plaintiff further asserts that it would have sought to rescind the Policies had it known that the number of units at the Property was more than the maximum covered by Diamond State's underwriting guidelines. (Pl.'s Mem. at 13). Specifically, under plaintiff's underwriting guidelines, only one-to-four family dwellings may be covered under a Diamond State dwelling policy of insurance. (Mulhern Aff., Exs. D, H). A complaint filed with the City Department of Buildings asserts that the construction was for four and five floors when the permit only authorized three floors. (Id.) Since courts have found a material misrepresentation and rescinded policies where the homeowner represented in the policy application that the home was

a two-family dwelling when it fact it was a three-family dwelling, see Lema v. Tower Ins. Co. of New York, 119 A.D.3d at 657, here, Guo's misrepresentation is clearly material.

Another material misrepresentation made by Guo was that the premises were occupied. (Pl.'s Mem. at 13-14). Plaintiff asserts that under the guidelines, a dwelling must be owner occupied or a rental to qualify for coverage under the dwelling program. (Id.; Mulhern Aff. ¶¶ 16, 33). Here, Guo represented that the Property was tenant-occupied and that he was an absentee owner. (Mulhern Aff., Exs. B, Z). Specifically, in a July 10, 2019 Anti-Arson Application filed by Guo, he not only indicated that the Property was tenant-occupied, but that the annual rental income was $40,000. (Id., Ex. Z). He further indicated "No" when asked if the property was commercial and whether more than 10% of the space was vacant, unoccupied, or seasonal. (Id.) Plaintiff asserts that this was clearly false since no one could occupy a building that was demolished in 2014 and is currently being rebuilt. (Pl.'s Mem. at 14-15). Insurance policies have been rescinded where there has been a misrepresentation as to whether the premises were occupied and if so, by whom. See Pillar v. Otsego Mut. Fire Ins. Co., 164 A.D.3d 534, 535-36 (2d Dept. 2018); see also Interboro Ins. Co. v. Fatmir, 89 A.D.3d 993, 994 (2d Dept. 2011).

Given the totality of the material misrepresentations that were justifiably relied upon by the plaintiff in issuing the Policies, the Court respectfully recommends that the court enter a declaratory judgment rescinding the Policies from 2015, 2016, 2017, 2018, 2019, 2020, and 2021.

E. No Coverage Under the Policies

When an insurer proves lack of coverage, as in this case, courts have held that the insurer is entitled to a declaration of no coverage. Automobile Ins. Co. of Hartford v. Cook, 7 N.Y.3d

15

131, 137, 818 N.Y.S.2d 176 (N.Y. 2006).  In Seaboard Surety Co. v. Gillette Co., 64 N.Y.2d 304, 486 N.Y.S.2d 873 (N.Y. 1984), the court held that "the duty of the insurer to defend the insured rests solely on whether the complaint alleges any facts or grounds which bring the action within the protection purchased."  Plaintiff asserts that in this case, the Policies only provide coverage for bodily injury or property damages that arises from ownership, maintenance, occupancy or use of a one family dwelling, of masonry construction, built in 1940."  (Pl.'s Mem. at 17).  Since the alleged injury to Hidalgo occurred at a newly constructed three-unit apartment hotel owned by KFG, plaintiff asserts that Diamond State is entitled to a judgment declaring that it has no duty to defend or indemnify in this matter.  (Id.)

The case authority is clear that an insurer has no duty to defend or indemnify when the Declaration page of the policy limits coverage to the designated premises and the injury occurs at a location not listed in the Designated Premises endorsement.  See Illinois Union Ins. Co. v. Midwood Lumber & Millwork, Inc., No. 13 CV 2466, 2014 WL 639420, *1, *6 (E.D.N.Y. Feb. 18, 2014); Ten Seventy One Home Corp. v. Liberty Mut. Fire Ins. Co., No. 07 CV 11211, 2008 WL 2464187, *1, 4 (S.D.N.Y. June 18, 2008).  Here, the Declaration page for the 2019 Policy specifically designates the covered location as the Property consisting of a one-family dwelling built in 1940 and located at 50-34 69th Street, Woodside, N.Y.  (Mulhern Aff. ¶¶ 7-8).  There is nothing in the Policy that expands the coverage to any other type of dwelling.

Since the claims in the Hidalgo Action relate to an accident that allegedly occurred on the Property in 2019 when there was no longer a one-family dwelling as described in the Policy, and the owner of the Property at the time was not Guo, the insured under the Policy, the claims in the underlying state court action do not fall within the coverage afforded by the 2019 Policy.

Indeed, in a letter dated February 3, 2020, Diamond State disclaimed coverage of the accident and claims in the underlying state court action. (Mulhern Aff., Ex. BB).

Accordingly, the Court respectfully recommends that the court enter a declaration of no coverage under the Policies for the Hidalgo accident.

## CONCLUSION

As stated above, the Court recommends a declaration of no coverage here and that the court enter a declaratory judgment rescinding the Policies from 2015, 2016, 2017, 2018, 2019, 2020, and 2021.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a), (e) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
July 23, 2021

/s/ Cheryl L. Pollak
Cheryl L. Pollak
Chief United States Magistrate Judge
Eastern District of New York